# COURT OF APPEALS OF VIRGINIA

### Record No. 1024-25-4

## RUSSELL WADE JEFFRIES, JR.
v.
## COMMONWEALTH OF VIRGINIA

Present: Judges O'Brien, Friedman and Frucci

Opinion Issued June 30, 2026[*]

### FROM THE CIRCUIT COURT OF FREDERICK COUNTY
Alexander R. Iden, Judge

(Jason E. Ransom; Ransom/Silvester, PLC, on brief), for appellant. Appellant submitting on brief.

(Jay Jones, Attorney General; Jennifer L. Guiliano, Assistant Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE MARY GRACE O'BRIEN

Following a jury trial, the circuit court convicted Russell Wade Jeffries, Jr., of aggravated malicious wounding and shooting or stabbing another in the commission of a felony. Jeffries argues that the court erred in denying his motion to dismiss the aggravated malicious wounding indictment because the general district court improperly nolle prossed a malicious wounding charge against him, depriving him of his statutory right to a preliminary hearing. He also asserts that the court erred in refusing to continue the trial because a defense witness was unavailable and by denying his

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

motion to strike because the evidence was insufficient to support his conviction. Finding no error, we affirm.[1]

## BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires [appellate courts] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

*Pretrial Proceedings*

On April 6, 2023, a grand jury indicted Jeffries for committing aggravated malicious wounding against L.M. on October 9, 2021. Jeffries moved to dismiss the indictment, arguing that he had already been charged by warrant with malicious wounding of L.M. for the same incident, and at an April 14 preliminary hearing, the Commonwealth moved to nolle pross the malicious wounding charge. He argued that the district court granted the nolle pross without good cause and in violation of his statutory right to a preliminary hearing under Code § 19.2-218. The court did not rule on the motion at that time.

Following several continuances, a jury trial was set for February 7, 2025. On February 4, Jeffries moved to continue the trial. The Commonwealth opposed the continuance.

---

[1] Appellant waived oral argument. Further, having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

At a February 6 hearing on the continuance, Jeffries asserted that he needed more time to prepare the use of jail calls with Shellie Cardinell. He also wanted to obtain a psychiatrist's expert opinion concerning his "memory and blackouts." Further, Jeffries raised the unresolved motion to dismiss the indictment. The court granted Jeffries's motion for a continuance and scheduled the trial for February 27. The court denied the motion to dismiss the indictment for lack of a preliminary hearing.

Two days before trial, Jeffries again moved to continue the trial because Cardinell, whom he had subpoenaed as a defense witness, was scheduled for kidney surgery on February 26. He asserted that he had learned of the surgery only a few days earlier.

In his motion, Jeffries maintained that Cardinell was a necessary witness for his defense for various reasons. Jeffries asserted that after the police concluded their investigation at L.M.'s home, she vandalized the truck Jeffries had driven there, which belonged to Cardinell, who had photos showing the vehicle's damage. Jeffries argued other reasons at trial, but he does not raise those on appeal.

At a hearing on Jeffries's motion, he acknowledged that he did not know when Cardinell would be available following her surgery but asked for a 30-day continuance. The court addressed Jeffries's reasons for why Cardinell's testimony was material and whether a continuance was required because she was unavailable.

The court ruled that evidence that L.M., knowing the vehicle belonged to Cardinell, damaged it after the incident at issue was collateral and inadmissible. Further, the Commonwealth agreed to several stipulations that addressed Jeffries's other concerns about not having Cardinell testify. The court ultimately denied the motion to continue.

*Evidence at Trial*

On October 9, 2021, at approximately 10:30 p.m., Kaitlyn Alger and Jeffries were at L.M.'s home. L.M. and Jeffries, who were romantically involved, did not have an "exclusive" relationship; she was aware he was involved with other women.

L.M. and Jeffries were outside near a fire that Jeffries had built. Jeffries was consuming liquor and became "very drunk." After Jeffries accosted her, putting his hands in her mouth and knocking her to the ground, L.M. took the liquor bottle and went inside her home.

L.M. set down the liquor bottle on the coffee table, which woke Alger, who was sleeping in a recliner chair. Jeffries "busted through the door" and accused L.M. of stealing his liquor bottle. L.M. showed Jeffries that the bottle was on the coffee table, but Jeffries began "calling [L.M.] names" and picked her up from a chair. He choked her repeatedly, each time counting to three before releasing her. Alger testified at trial that Jeffries choked L.M. in this way five to ten times. Between the choking episodes, Jeffries struck L.M. in the head with a lamp and threw her to the ground. Alger and L.M. both told Jeffries that his bottle was on the table, but he did not stop the attack. Jeffries also hit L.M. in the head with the liquor bottle. L.M. was screaming and begging Jeffries to stop. Alger estimated that the attack lasted about 20 to 30 minutes.

Jeffries pulled out a pocketknife and threatened L.M., "I will put a scar on your face." He grabbed Alger by her hair, pointed the knife at her stomach, and said he would "deal with" her, too. He threatened to rape Alger "in every hole" that she had. Jeffries stabbed L.M. with the knife. L.M. ran down the hallway, and Jeffries followed.

L.M. fled for her bedroom, where she kept a gun in a safe. Jeffries continued to choke L.M. and hit her on the head. The back of L.M.'s head struck a picture frame and broke it. The attack ended suddenly, and L.M. got her gun. When she left the bedroom, she found no one else inside the home. L.M. ran outside and ran down the road to a grocery, where she told a clerk that

- 4 -

she needed help. Law enforcement and medical personnel arrived at the store and tended to L.M. and her injuries.

Alger testified that when Jeffries followed L.M. toward her bedroom, Alger grabbed her shoes and cell phone and ran outside. She got in her car and started to drive off but turned around and came back; she saw Jeffries going in and out of the front door, so she did not return to the house until the police arrived.

After the incident, L.M. was in "rough shape" from the beating, had sustained a significant cut on the side of her face, and was hoarse for several weeks from being choked. At trial, L.M. had a scar on her face.

Jeffries was arrested near L.M.'s house the next day; he stated he had been looking for her and his dog. Jeffries said that he and L.M. had been in an argument the previous night but denied that there was a physical altercation. When asked about the cut on L.M.'s face, Jeffries denied that he caused it. He claimed that what appeared to be blood on his pants was from scratches he sustained in the woods while looking for L.M. and his dog. When arrested, Jeffries possessed a pocketknife.

At trial, Jeffries claimed that when he entered L.M.'s home after drinking near the fire, he questioned where his belongings were and that L.M. "started wailing on" him. In response, Jeffries pushed L.M. down and they fell onto a glass frame between two chairs, cutting L.M.'s face. Jeffries denied choking L.M. or pulling out his pocketknife. He claimed that he did not hit L.M. in the head with a lamp or the liquor bottle. Jeffries also denied threatening Alger. He claimed that he tried to stop L.M. as she headed toward the bedroom for her gun; he pushed her into the wall, and they broke a picture frame in the hallway. Jeffries said he went outside, got in his truck, and waited. He also testified that he told the police there was no physical altercation because he did not want to cause any trouble for himself or L.M.

On cross-examination, Jeffries admitted telling a friend during a call from jail that he did not remember what happened during the incident. Jeffries, who had multiple felony convictions, said that his memory of the event was clearer at trial than when he made the call from jail.

The jury convicted Jeffries of both offenses. The court sentenced him to life plus 5 years of imprisonment with all but 24 years and 5 months suspended.

ANALYSIS

I. Motion to Dismiss

Jeffries argues that the circuit court erred in denying his motion to dismiss the aggravated malicious wounding indictment because he was denied his right to a preliminary hearing under Code § 19.2-218 when the district court granted the Commonwealth's motion to nolle pross the malicious wounding charge.

Under Code § 19.2-218,

> No person who is arrested on a charge of felony shall be denied a preliminary hearing upon the question of whether there is reasonable ground to believe that he committed the offense and no indictment shall be returned in a court of record against any such person prior to such hearing unless such hearing is waived in writing by the accused.

This Court has held that a "circuit court is without subject matter jurisdiction to conduct an appellate review of the district court's order granting a motion for *nolle prosequi* and therefore cannot reverse that court's order." *Wright v. Commonwealth*, 52 Va. App. 690, 705 (2008) (en banc). Accordingly, Jeffries "was not entitled to have the circuit court review the district court's discretionary decision and grant h[is] requested remedy of . . . having the subsequent indictment[] dismissed." *Id.* at 707.

Once the malicious wounding charge was nolle prossed, it ceased to exist, along with any statutory right to a preliminary hearing. *See Armel v. Commonwealth*, 28 Va. App. 407, 410 (1998); *Arnold v. Commonwealth*, 18 Va. App. 218, 222 (1994). Code § 19.2-218 did not entitle

him to a preliminary hearing for a charge that ceased to exist. Jeffries was tried and convicted on an indictment charging him with aggravated malicious wounding. Accordingly, we find no error in the circuit court's denial of Jeffries's motion to dismiss the indictment.

## II. Motion for a Continuance

"Whether to grant or deny a continuance of a trial is a matter that lies within the sound discretion of a trial court, and its ruling will not be reversed on appeal unless it is plainly wrong." *Carter v. Commonwealth*, 39 Va. App. 735, 744 (2003). "A court must exercise this discretion in a manner that does not prejudice a defendant's right to a fair and impartial trial or deprive him of his constitutional right 'to call for evidence in his favor.'" *Id.* (quoting Va. Const. art. I, § 8). But "absent a showing of prejudice to a defendant by the denial of a continuance, an appellate court will not find that a trial court abused its discretion." *Id.* at 745.

Jeffries argues that the court erred in denying his motion to continue the February 27, 2025 trial date because Cardinell was a necessary and indispensable witness for the defense and she was unable to appear at trial due to her surgery. Jeffries cites Cardinell's expected testimony, and the photos on her cell phone, showing that L.M. vandalized Cardinell's truck after the incident.

"[E]vidence of other crimes, wrongs, or acts is generally not admissible to prove the character trait of a person in order to show that the person acted in conformity therewith." Va. R. Evid. 2:404(b). But "evidence of a pertinent character trait or acts of violence by the victim of [a] crime" is admissible if "offered by an accused who has adduced evidence of self defense." Va. R. Evid. 2:404(a)(2). "[E]vidence of prior acts of violence by the victim is relevant as bearing on the reasonable apprehension which the defendant may have experienced and on the likelihood of the victim's aggressive behavior as claimed by the defendant."

*Anderson v. Commonwealth*, 69 Va. App. 396, 402 (2018) (alteration in original) (quoting *Luck v. Commonwealth*, 30 Va. App. 36, 43 (1999)).

The actions that L.M. may have taken after Jeffries's attack upon her had no tendency to prove that he acted in self-defense during the incident. Even if L.M. did damage Cardinell's vehicle, that occurrence did not demonstrate that L.M. was the aggressor against Jeffries or had any bearing on his reasonable apprehension of her alleged aggressive behavior. *See id.* The evidence of any purported vandalism, which occurred well after the attack, was inadmissible and irrelevant to any issue at trial.

Accordingly, Jeffries sustained no prejudice by the court's denial of a continuance. We therefore hold that the court did not abuse its discretion.

### III. Sufficiency of the Evidence

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Peery v. Commonwealth*, 87 Va. App. 296, 309 (2026) (alterations in original) (quoting *Commonwealth v. Barney*, 302 Va. 84, 97 (2023)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Barney*, 302 Va. at 97). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the

finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Jeffries contends that L.M.'s and Alger's testimony was inherently incredible. He emphasizes inconsistencies between their testimony and their statements to the police concerning the incident. "[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, this Court must accept 'the [factfinder's] determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable [people] ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

L.M. and Alger testified that Jeffries, after consuming alcohol outside, came into the residence, demanded his bottle of liquor, berated L.M., and attacked her. Jeffries choked L.M. repeatedly, each time counting to three before releasing her. He struck her in the head with a lamp and the liquor bottle. L.M. was screaming, and both women pleaded with him to stop. Eventually, Jeffries pulled out a pocketknife and cut L.M.'s face. At trial, L.M. had a facial scar. After threatening to harm Alger as well, Jeffries chased L.M. down a hallway as she fled to get her gun from the bedroom. There was no evidence that L.M. and Alger's testimonies were "so manifestly false that reasonable [people] ought not to believe it." *Id.* (quoting *Juniper*, 271 Va. at 415).

Jeffries also asserts that the Commonwealth's evidence did not exclude the reasonable hypothesis of innocence that he acted in self-defense. But the jury heard his testimony that L.M. was the aggressor in the situation and chose to reject it. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

"The reasonable hypothesis formulation only requires that a criminal defendant be acquitted when the evidence provides no reasonable basis for a factfinder choosing between two equally likely options: guilt, on the one hand, and innocence, on the other." *Cuffee v. Commonwealth*, ___ Va. ___, ___ (Apr. 16, 2026). "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Id.* (quoting *Lucas v. Commonwealth*, 75 Va. App. 334, 348 (2022)). "If, based on the evidence presented, a jury *reasonably* rejects a proffered hypothesis of innocence, the hypothesis is not a reasonable one." *Id.* "So long as the factfinder's rejection of a proposed hypothesis as unreasonable is not arbitrary, the reasonable hypothesis of innocence principle provides no authority for an appellate court to invade the province of the factfinder." *Id.* (citations omitted).

For the reasons stated above, the Commonwealth's evidence sufficiently proved that Jeffries attacked L.M., beat her head with several objects, choked her repeatedly, and cut her face, leaving a scar. Thus, the jury's rejection of his claim that he acted in self-defense was not arbitrary, and Jeffries's "proffered reasonable hypothesis of innocence did not entitle him to an acquittal in this case." *Id.*

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*